DANIEL DAVIS AND THOMAS RANKIN v. E. S. DAVIS ET AL.

*Damages—Loss of profits—Right of exclusive use of patented articles—Evidence.*

1. In a suit to recover for milk-cans sold to a creamery company, the defendants sought to recoup damages for loss of profits arising, as claimed, from a breach of the agreement of the vendors to protect the defendants in the *exclusive* use of that kind of can in specified territory. The testimony failed to show that, if other creameries had not used the can in the territory, the residents therein would have furnished cream to defendants in preference to the other creameries in *other* cans, but did show the refusal of a portion of such residents to supply defendants with cream in the kind of cans purchased. And it is held that there was nothing tangible upon which the jury could base an estimate of defendants' loss of profits on account of such competition.

2. Evidence that defendants purchased 800 of the cans, and only used 550, when plaintiffs only contracted to furnish them 600, is held inadmissible, it not being competent to show such excess, and the price paid, for the purpose of laying before

the jury the amount of money invested by defendants in the cans.

3. The testimony showed that the amount of cream received by defendants, with that furnished to other creameries in the territory referred to, only amounted to one-half the daily capacity of defendants' creamery. And it is held that testimony as to the profits which defendants could have made on each pound of butter made during the season, provided the creamery was run to its *full* capacity, was incompetent, there being no *data* before the jury from which to find such a verdict.

Error to Sanilac. (Beach, J.) Argued December 3, 1890. Decided December 24, 1890.

*Assumpsit.* Plaintiffs bring error. Reversed. The facts are stated in the opinion.

*Elbridge F. Bacon* (*William A. Mills*, of counsel), for appellants, contended:

1. Evidence of an oral agreement, made prior to the signing of the contract and notes, that plaintiffs would remove the Port Huron Creamery Company, or cause it to withdraw, from the territory conveyed to defendants, was inadmissible; citing *Adair v. Adair*, 5 Mich. 204; *Savercool v. Farwell*, 17 Id. 308; *Martin v. Hamlin*, 18 Id. 354; *Vanderkarr v. Thompson*, 19 Id. 82; *Cline v. Hubbard*, 31 Id. 237; *Baker v. Morehouse*, 48 Id. 334; *Skeels v. Starrett*, 57 Id. 350; *Walsh v. Martin*, 69 Id. 29.

2. The testimony regarding profits was incompetent, because—

    *a*—It called for the opinions of witnesses, instead of the facts from which the jury could form their own opinion, and it was not a proper matter for expert testimony; citing *Lemon v. Railway Co.*, 59 Mich. 618; *Anderson v. Boom Co.*, 61 Id. 494; Sedg. Dam. 589, 591; *Norman v. Wells*, 17 Wend. 162; *Reed v. McConnell*, 101 N. Y. 270; *Wakeman v. Manfg. Co.*, Id. 217; *Mitchell v. Allison*, 29 Ind. 43; *Bissell v. Wert*, 35 Id. 54; *Whitmore v. Bowman*, 4 Greene, 148.

    *b*—Because the questions were based on unsupported assumptions of fact; citing Lawson, Exp. Ev. 537; *Kempsey v. McGinniss*, 21 Mich. 138; *Hitchcock v. Burgett*, 38 Id. 507; *Van Deusen v. Newcomer*, 40 Id. 119; *People v. Hall*, 48 Id. 489; *People v. Millard*, 53 Id. 63.

    *c*—Because the loss of anticipated profit is not the proper

measure of damages in this case, if defendants are entitled to recover any.

*Avery Bros.* (*Charles H. McGinley*, of counsel), for defendants, contended:

1. Evidence of the frequent assurances by the plaintiffs that the Port Huron people would be removed from the territory was proper, in connection with proof of plaintiffs' representations that they had no right there; and the question whether such representations induced the note was a material inquiry, and the jury were entitled to have the evidence upon the subject to weigh with the surrounding circumstances; citing *Hyde v. Nelson*, 11 Mich. 353; *Brown v. Blanchard*, 39 Id. 790; *Bedford v. Penny*, 58 Id. 424; *Angell v. Pickard*, 61 Id. 561.

2. In support of the right to recover damages for loss of profits, counsel cited *Allis v. McLean*, 48 Mich. 428; *McKinnon v. McEwan*, Id. 106; *Leonard v. Beaudry*, 68 Id. 312.

CHAMPLIN, C. J. On January 20, 1887, the defendants entered into an agreement with the plaintiffs by which the plaintiffs were to furnish to the defendants certain creamery supplies on the cars at Chicago, and also to put into operation the machinery, which they furnished to the defendants for a creamery at Minden City, in the State of Michigan, which was to have a capacity for making 1,500 pounds of butter a day. Among the supplies to be furnished were 600 Fairlamb milk-cans, of $5\frac{1}{2}$ gallons each. The defendants were to pay the plaintiffs the sum of $2,065, as follows: $1,065 in cash when the machinery was ready for operation; one note of $500, due on or before April 20, 1888; one note of $500, due on April 20, 1889; and, when the defendants were ready to make butter, the plaintiffs were to convey to them the right to use the Fairlamb patent milk-cans within a radius of 10 miles from Minden City, except when in conflict with other creamery plants established before the date of that agreement.

It appears that the creamery was ready to do business by May 20, 1887, at which date Davis & Rankin, the

plaintiffs, executed and delivered to the defendants an agreement setting forth that the plaintiffs were the owners of the following valuable patent, to wit, No. 215,-812, secured by letters patent issued by the United States for new and valuable improvements in milk-cans, and thereby granted to defendants the exclusive use of said invention within the said territory of a radius of 10 miles from Minden City, where the same does not conflict with Cass City Creamery or Port Sanilac Creamery, which grant was upon certain conditions mentioned in the agreement, not necessary to mention here. At this time the plaintiffs, through their agent, settled with the defendants, and took their notes, one of which is in suit, and reads as follows:

"MINDEN CITY, STATE OF MICHIGAN, May 20, 1887.

"April 20, 1888, after date, we promise to pay Davis & Rankin or bearer at the Minden City Bank the sum of $500, with interest at seven per cent. from date, without defalcation, for value received in filling contract for creamery goods and territory.

"$500."

This note not being paid at maturity, suit was brought upon it, in which the defendants pleaded the general issue, and gave notice that they would show under said plea that a part of the consideration of the note was the full and exclusive right to use the Fairlamb can within the territory mentioned, with the exception of such territory as was at that time used by the Cass City and Port Sanilac creameries; and that they had not been allowed the use and occupation and enjoyment of the privilege of using the Fairlamb can within that territory, as agreed; and that the territory had been used and occupied and enjoyed almost exclusively by a creamery at Port Huron, which had used and gathered cream within the territory with Fairlamb cans furnished by the plaintiffs, contrary to and in violation of their agreement with

the defendants. They further gave notice that the plaintiffs expressly agreed and undertook to grant to the defendants the sole right to use the Fairlamb can within the territory granted, and expressly agreed to exclude other persons from using or attempting to use, for the purpose of gathering cream for creameries, the Fairlamb can, which they failed to do; and that, by reason of the plaintiffs' failure to observe and perform the conditions of the said agreement, the defendants had suffered great damage in lying idle, not being able to operate their creamery at its full capacity, and were compelled to run at great loss.

As a further defense, they gave notice that they would show that at the time stated, when the plaintiffs sold the cans to the defendants, together with the territory specified, they had previously sold, conveyed, and granted to a creamery situated at Port Huron, known as the "Port Huron Creamery," the right to use the Fairlamb can within the territory so conveyed to the defendants' creamery at Minden City, and notwithstanding they had so sold the same and given the right to the said Port Huron Creamery to gather cream in the Fairlamb can from the territory, the plaintiffs, through their agents and representatives, conveyed the right to use the can in said territory to the defendants, fraudulently, and for the purpose of defrauding the defendants, representing, at the time they so sold the cans and territory to the defendants, that the Port Huron Creamery had no right or interest in the territory conveyed to the defendants, and that the plaintiffs would immediately remove them from the said territory; that the defendants were induced to give the note sued upon on account of the representations made by the plaintiffs at the time as to the right and interest in said territory, and the right to use the Fairlamb can therein, of the Port Huron Creamery,

all of which representations were false, and known to be so by the plaintiffs at the time they were made, and were so made for the sole purpose of defrauding defendants, and inducing them to execute the note sued on; and that, by reason of the false representations, they suffered damage.

The trial in the case resulted in a judgment and verdict for the defendants over and above the claim of the plaintiffs sued upon of $1,484.24, and the plaintiffs bring the case here by writ of error.

As to the first defense set up, that there was an agreement to exclude the Port Huron Creamery from the territory named, it could not be made available to the defendants, for the reason that it was not embraced in the writings made between the parties. The court below took that view of the case, and charged the jury that the plaintiffs' right of recovery depended upon the question whether they made false representations to induce the defendants to enter into the contract and give the notes in suit, and the damages which resulted, if any, to the defendants by reason of such false representations.

The claim of the defendants made upon the trial was that their damage consisted in a loss of profits which they could and would have made if they had been permitted the sole and exclusive use of the Fairlamb can in the territory designated. The Fairlamb can is not the only can in which cream is collected from among farmers, as appears by the testimony in the case, for mention is made of the Cooley can, and of the Haney can, and it appears from the testimony that the Port Huron Creamery Company had, in its use, in the territory described as the Minden City Creamery territory, 500 of the Fairlamb cans, and 125 other cans; or, in other words, 20 per cent. of the cans used by them in collecting cream from the farmers were other than the Fairlamb cans. These cans

were owned . by different creameries, and were furnished
to the farmers in the territory in which the creamery
operated, to deposit their cream, and the cans were then
collected by the owners of the creamery, and taken to
the place of manufacture by them.   During the year 1887,
the year for which this judgment was obtained, no charge
was made to the farmers for the use of the cans.   I men-
tion this simply as bearing upon the question as to the
damages which might arise to the defendants from not
being permitted the exclusive use of the Fairlamb can.

It appears also in the testimony that, in this same dis-
trict of territory, there was other competition; that the
creamery at Bad Axe occupied the same territory, or a
portion of it; and that there was a cheese factory in
Sherman, running all the time, presumably using a dif-
ferent can from the Fairlamb can.

The defendants introduced some testimony tending to
prove that after they started their business they made
efforts to get the patronage of the farming community in
four towns named, which they say were operated in also
by the Port Huron people; that they got some customers,
but did not get as large a proportion as they thought
they ought to have had, and they place the cause of their
failure to get the patronage of those people at the occu-
pation of the same territory by the Port Huron Creamery,
and their use of the Fairlamb can.   Defendant Davis says
he talked with the farmers, and endeavored to induce
them to furnish the cream to him, but the objections
which they made were that they had already agreed with
the Port Huron people to furnish the cream to them; and
that they should continue to do so for that year at least;
and that they thought that the competition of the Port
Huron people was beneficial to them.   But nowhere does
he state in his testimony that these farmers alleged or
claimed that they would not supply their cream to the  ·

Port Huron people unless they could do it in a Fairlamb can. As before stated, 20 per cent. of them were supplying the Port Huron people with a different can than the Fairlamb.

The defendant Davis testifies that the Minden City Creamery, manufactured, on an average, during the season of 1887, 300 pounds of butter daily. He also testified that their creamery had a capacity of 1,200 pounds as constructed, and they were occupied only about one-half of the time during the year in making butter; that they did not earn their expenses; that the reason was that they could not get their cream, and the reason of not getting the cream, he always claimed, was because the territory was occupied by the Port Huron people. He also testified that his creamery paid 13, 14, 15, and 17 cents per pound for cream, and he says they paid below the market price; that it cost them between 2 and 3 cents to make a pound of butter in their creamery, about $2\frac{1}{2}$ cents to market it, and about 3 cents for gathering it. It further appeared in the testimony that 15 cents a pound for cream was a fair average that year of the cost, and that the price of butter averaged 22 cents a pound. It will be seen that they must have manufactured at a loss. They also introduced testimony by the witness McNutt, tending to prove that the Port Huron Creamery took from the territory covered by the Minden City Creamery a daily average of 275 to 300 pounds of cream; and Mr. Davis, the defendant, testifies that, if their creamery had received that quantity of cream which was taken by the Port Huron people, they could have manufactured at a profit of from one to two cents a pound on the entire amount they manufactured. McNutt also is of the opinion that the Minden City Creamery could have manufactured, if they had received the cream

which the Port Huron Creamery had taken from that territory, at a profit.

The testimony with reference to the profits which might have been made if the Port Huron people had not used the Fairlamb can was all taken against the plaintiffs' objection, and we think that the testimony was too uncertain and speculative in character to furnish any reliable *data* upon which to estimate profits. There was no testimony showing that, if this can had not been used, the people in this territory would have supplied their cream to the Minden City Creamery in preference to the Bad Axe or to the Port Huron Creamery in other cans, and there appears to be no way of ascertaining such fact. The defendant Davis testifies that he had 800 cans of the Fairlamb patent; that he tried his best to induce the farmers to supply him with cream in these cans, but he failed to do so except to a limited extent. It is fair to presume that the farmers would sell their cream to those who would pay the highest price. There was nothing obligatory upon them to sell their cream to the Minden City Creamery. It differs in this respect from any case which has yet come before this Court in which we have held that prospective profits might be recovered. Mr. Davis went upon the stand, and was asked these questions:

" *Q.* Do you say that the Port Huron Creamery, if it had not been there, you could have got the cream from those parties?

" *A.* I could not swear positively they would give me the cream.

" *Q.* Did you ask them if they would give you the cream if the Port Huron Creamery was not there?

" *A.* I asked them if they would, and they said they would sell to the Port Huron Company another year. They commenced before we did, and they didn't want to change. That is the reason they gave for it.

" *Q.* What were the other reasons they gave?

"*A.* They gave the reason that they had competition, and if they didn't the price of cream would be too low, and they would not get as much for it.

" *Q.* That is the reason that they would not give you the cream,—because it would keep competition away?

"*A.* Yes, sir; quite a number of them said that."

He further testified in that connection:

"I know, as a matter of fact, that some of the cream collected by the Port Huron Company was not collected in Fairlamb cans. They had some other cans mixed in the territory."

Now, it seems to me that there is nothing tangible upon which a jury can base an estimate of a loss of profits on account of competition in that territory with a Fairlamb can used by the Port Huron Company.

But there are other objections which would make it necessary to reverse this case, even if they could supply a reasonable *data* upon which to estimate the damages. As before stated, it already appears that the quantity of cream collected by the Minden City Creamery Company was an average of about 300 pounds a day, and that collected by the Port Huron Creamery of about 275 or 300 pounds a day, making a total average combined of about 600 pounds. This, according to the testimony, was only one-half the capacity of the creamery of the Minden City Company, so that, if they had all the cream which was collected in the Fairlamb cans in that territory, the total quantity received by them would be a daily average of 600 pounds. Now, in putting the question as to the amount of profits which they were entitled to receive on account of the competition of the Fairlamb can used by the Port Huron Company, these questions were put and answered against the objection of the plaintiffs. The witness McNutt, being upon the stand, was asked:

" *Q.* Now, from your experience in the creamery business, in its *economical* management, managed in a busi-

ness-like way, and run to its full capacity, what, from May 20, 1887, to May 20, 1888, would be the cost of manufacturing a pound of butter from a guage of cream; that is, of the territory you are in, from the cream you can gather with the horses, confining it then to the territory, running during the creamery season from 1887 to 1888, and letting the territory be the territory that you occupied at Minden City? What would it be,—what would be the profit?

"*A.* I should judge in that territory that our profit was three cents a pound."

He was then asked whether or not in his opinion, and from his knowledge of the business, and carrying it on, it would cost more to manufacture at Minden City than Port Huron; and he replied:

"They could manufacture it cheaper than we could at Port Huron, because we paid the freight from Minden City to Port Huron on the cream.

"*Q.* Then, what ought to be the profit on each pound of butter manufactured or each guage of cream collected to the Minden City Creamery, provided that it ran to its full capacity, and ran economically? What would you say it ought to be?

"*A.* I think if it were run to its full capacity, with expenses that would naturally be connected with it during the year 1887, they should clear four cents a pound on their butter, provided they ran it with full capacity, with the expenses that would necessarily be at a creamery."

There was no *data* whatever introduced before the jury upon which they would have been authorized to find a verdict based upon the profits which the Minden City Creamery could have received if it had run at its full capacity. The testimony is uncontradicted that all the cream they received, and including that which they say was taken away in the Fairlamb cans for Port Huron, did not exceed 600 pounds on a daily average, which would be only, as before stated, one-half of the capacity of the creamery. This testimony must have had a prej-

udicial influence with the jury, for Mr. McNutt testified that the capacity of the Port Huron Creamery was 800 pounds daily average, and that they realized from that season's business a profit of only one cent a pound, or about $1,600 for the season's work; whereas, in this case, if the capacity be called 600 pounds daily average, the jury have found a verdict which would make the profits exceed $2,000.

Another error was committed in permitting the defendant Davis to testifiy that he purchased 800 of the Fairlamb cans, and that he had used only 550. The contract only called upon the plaintiffs to supply 600 of these cans, and, if the defendants purchased more, it was not competent for them to show the excess, and the price of them, for the purpose of laying before the jury the amount of money which they had invested in cans.

We do not deem it necessary to pass upon the question of the fraud alleged in the declaration and exhibited through the proofs, as we are of opinion that the measure of damages relied upon in the case, as being on account of a loss of profits in the use of the Fairlamb can, is not a proper measure of damages for such misrepresentations, if any were made, not, however, deciding that if they could be connected, and made out to a reasonable certainty, it might not be a proper method of arriving at the damages.

The judgment must be reversed, and a new trial ordered.

The other Justices concurred.